UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) <br> ) <br> Plaintiff-Respondent, ) <br> ) <br> v. ) <br> ) <br> JOSE LUIS HERNANDEZ-ZARCO, ) <br> ) <br> Defendant-Petitioner. ) <br> ) <br>  ) | Civil No. 06-CV-1313-L (LSP) <br> Criminal No. 90-M-5411 <br><br> **ORDER DENYING PETITION FOR WRIT OR ERROR CORAM NOBIS; MOTION TO VACATE JUDGMENT AND SENTENCING** |

Petitioner Jose Luis Hernandez-Zarco filed a petition for writ of error *coram nobis* ("Petition") seeking to vacate his December 7, 1990 conviction and sentence for misdemeanor possession of 24.30 kilograms of marijuana. He seeks this relief because the conviction subjects him to voluntary departure from the United States and precludes him from becoming a resident alien. The Petition has been fully briefed by both parties. For the reasons which follow, the Petition is **DENIED**.

**FACTUAL AND PROCEDURAL BACKGROUND**

Petitioner is a Mexican national who entered the United States illegally in September 1985, and subsequently resided in the United States as an undocumented alien. On December 6,

1990, when he was returning from a visit to Mexico, Petitioner was arrested by United States Border Patrol agents. The following day, he appeared before Magistrate Judge R. Curtis McKee in this district for his initial appearance and arraignment in case no. 90M5411.[1] Petitioner was informed he was charged with a felony conspiracy to import and possess with intent to distribute marijuana. The government alleged Petitioner was in possession of two bags containing a total of 24.30 kilograms of marijuana, and that another two bags containing 25.34 kilograms of marijuana were found in the area near his apprehension.

   Petitioner was advised by a "counseling attorney"[2] that the government was offering him an option to plead guilty to a misdemeanor of simple possession of marijuana, which offer was available only if he agreed immediately to plead guilty and be sentenced the same day. Petitioner was further informed that if he pled guilty, the maximum sentence would be one year in custody, whereas if he was convicted on the felony charge, his sentence would be far greater. Petitioner insisted he was not guilty and was not in possession of the duffel bags with marijuana. However, he considered entering a guilty plea when the counseling attorney advised him his version of the events would not be believed over the testimony of the arresting Border Patrol agents. Petitioner then "related to the counseling attorney that [he] was not willing to accept the government's offer if this guilty plea would disqualify [him] from legalizing [his] immigration status in the United States in the future." (Hernandez-Zarco Decl. ¶ 6.) The counseling attorney assured him that "since the offense . . . was a misdemeanor, this conviction would not preclude [Petitioner] from legitimizing [his] immigration status in the future."[3] (*Id*.)

---

[1]  Due to the passage of time, the court file of this case has been destroyed. (Pet. Ex. A.) However, the United States Attorney's Office file is available, and the nonprivileged portions were appended to the government's response. (Resp. at 2 n.1 & Ex. 1.)

[2]  According to the government, Petitioner was represented by the Federal Defenders (Resp. at 2 n.2 & Ex. 1B), but Federal Defenders were unsuccessful in locating the defense attorney's name or file.

[3]  This information, however, was incorrect. Pleading guilty to the drug charge rendered Petitioner excludable and subject to deportation pursuant to 8 U.S.C. Sections 1182 and 1227(a)(2)(B)(ii). (Pineda-Kamariotis Decl. ¶ 5.) The immigration law provided for a waiver of a drug-related conviction only for simple possession of 30 grams or less of marijuana. (*Id*.)

Based on this assurance, Petitioner pleaded guilty to count 2 of the complaint (misdemeanor offense of possession of 24.30 kilograms of marijuana), and count 1 (felony offense of importation of 24.30 kilograms of marijuana) was dismissed. (*Id.*; Resp. Ex. 1A, 1D.) Petitioner was immediately sentenced to five months in custody. (Hernandez-Zarco Decl. ¶ 6; Resp. Ex. 1D.) After the completion of his sentence, Petitioner "was voluntarily returned to Mexico." (Hernandez-Zarco Decl. ¶ 8.) The following day, he re-entered the United States "without inspection through the hills near the San Ysidro Port of Entry" and returned to his home in Milbrae, California. (*Id.*)

Petitioner did not attempt to address his immigration status until January 1999, when he retained Walter R. Pineda, an immigration attorney. Pineda informed Petitioner his misdemeanor conviction, if proven by the government, would disqualify him from becoming a lawful permanent resident. He advised Petitioner, however, that the records pertaining to the misdemeanor had been destroyed, which would prevent the immigration officials from proving it, and that Petitioner should proceed with his application to legalize his status.[4] (*Id.* ¶ 9 & Ex. A.)

On July 6, 2001, Pineda filed an Application for Asylum and for Withholding of Removal ("Asylum Application") on behalf of Petitioner and his family. (Resp. Ex. 3.) In the Asylum Application, Petitioner indicated he was married and had children. His wife was an undocumented alien, as were all but one of his children. (*Id.* at 3-4, 9.) On August 30, 2001, the Asylum Application was rejected because it was filed more than a year after Petitioner's last arrival in the United States, and because he did not show extraordinary circumstances for the delay in filing the Application. (*Id.*) Petitioner was then placed in removal proceedings. (*Id.*)

/ / / / /

---

[4] This was bad advice, because the application for asylum Pineda filed was apparently frivolous, and was rejected as untimely. "Because cancellation of removal is only available in removal proceedings, some lawyers do what Pineda did to get their clients into removal proceedings. [¶] It is common for unsavory attorneys to surrender people for cancellation of removal by the asylum route . . .." (Lawler Decl. ¶¶ 6-7.) As of October 23, 2006, charges against Pineda were pending before the California Bar, and he voluntarily became inactive. www.calbar.ca.gov (attorney search); *see also* Lawler Decl. Ex. A.)

On October 15, 2001, Pineda filed an Application for Cancellation of Removal and Adjustment of Status ("Cancellation Application"), which the immigration judge denied on September 20, 2005. (Hernandez-Zarco Decl. ¶ 10; Pet. Ex. C.) The Cancellation Application was denied because Petitioner conceded he was subject to removal, the Asylum Application was not being actively pursued, Petitioner's designation of Mexico as the country of removal conflicted with the Asylum Application, and because of Petitioner's conviction for possession of marijuana. (Pet. Ex. C at 2-3.) The immigration judge noted "a person applying for cancellation of removal must demonstrate that he has not been convicted of an offense under" certain sections of the Immigration and Nationality Act, and there was "no clear evidence whether 30 grams or less [of marijuana was] the amount [Petitioner] did or did not possess" so as to satisfy an exception in the law. (*Id*. at 3.) The judge granted Petitioner's application for voluntary departure because he had "no law enforcement history" in the five preceding years. (*Id*. at 4-5.) The date set for Petitioner's voluntary departure was November 21, 2005. (*Id*. at 5.) This date has been extended until November 28, 2006. (*See* Lawler Decl. ¶ 4.)

In October 2005, Petitioner hired a new immigration attorney and appealed from the denial of the Cancellation Application. (Hernandez-Zarco Decl. ¶11; Pet. Ex. D.) Petitioner's appeal to the Board of Immigration Appeals ("BIA") was denied on October 6, 2006. (Lawler Decl. ¶ 10.) Petitioner is currently pursuing either a challenge to the BIA decision or a reopening of the removal proceedings before the BIA, which he believes would be enhanced if this Court granted the instant Petition. (*Id*. ¶¶ 10-12.)[5]

**DISCUSSION**

"Federal courts have authority to issue the writ of coram nobis under the All Writs Act, 28 U.S.C. § 1651(a)." *United States v. Kwan*, 407 F.3d 1005, 1011 (9th Cir. 2005). The writ of

---

[5] Upon obtaining a 30-day extension of time to file a reply brief and filing his reply on October 30, 2006, Petitioner requested the Court render a decision on his Petition within a week, and if not within a week, at least within three weeks, to enhance Petitioner's chances on his appeal of the BIA decision to the Ninth Circuit, or in reopening the removal proceedings. (Reply at 3; Lawler Decl. ¶¶ 10-12.)

error coram nobis affords a remedy to attack a conviction when the petitioner, like the Petitioner in the instant case (Hernandez-Zarco Decl. ¶ 13), has served his sentence and is no longer in custody. *Estate of McKinney By and Through McKinney v. United States*, 71 F.3d 779, 781 (9th Cir.1995). "Specifically, the writ provides a remedy for those suffering from the lingering collateral consequences of an unconstitutional or unlawful conviction based on errors of fact and egregious legal errors." *Id*. (quotation marks and citation omitted).

"To qualify for coram nobis relief, four requirements must be satisfied. Those requirements are: (1) a more usual remedy is not available; (2) valid reasons exist for not attacking the conviction earlier; (3) adverse consequences exist from the conviction sufficient to satisfy the case or controversy requirement of Article III; and (4) the error is of the most fundamental character." *Id*. at 781-82 (quotation marks and citations omitted). Since Petitioner failed to show valid reasons existed for the sixteen-year delay in attacking his conviction, the Court does not address the remaining three elements.

Although the time for filing a petition for writ of coram nobis is not subject to a specific statute of limitations, petitioners must "provide valid or sound reasons explaining why they did not attack their sentences or convictions earlier." *Kwan*, 407 F.3d at 1012. Petitioner has not attacked his conviction before filing the instant Petition. (Hernandez-Zarco Decl. ¶ 14.) "[A] coram nobis petition is subject to the equitable doctrine of laches which bars a claim if unreasonable delay causes prejudice to the defendant." *Id*. at 1013 (quotation marks, citation and alterations omitted). The government maintains the Petition is barred by laches because of prejudice and because Petitioner did not show valid reasons for delay. The court agrees.

"If a respondent seeks dismissal of a coram nobis petition on the ground of laches, the respondent bears the burden of showing he was prejudiced by the petitioner's delay." *Id*. The government contends it has been prejudiced in its ability to respond to the Petition or retry Petitioner if the Petition is granted. Petitioner asserts that had he been properly advised about the immigration consequences of his guilty plea, he would have insisted on his right to trial. (Hernandez-Zarco Decl. ¶ 12.) "In making a determination of prejudice, the effect of the delay

on both the government's ability to respond to the petition and the government's ability to mount a retrial are relevant." *Telink, Inc. v. United States*, 24 F.3d 42, 48 (9th Cir. 1994).

Due to the delay, the court file has been destroyed (Pet. Ex. A), including the transcript of Petitioner's colloquy and sentencing, which would indicate whether Petitioner was advised on the record regarding the consequences of his guilty plea. The documents identifying Petitioner's defense counsel are no longer available, and the evidence (marijuana) has been destroyed.[6] The memories of the witnesses have faded. For example, Special Agent Lori Giannantonio no longer has any recollection of the case, although she handled Petitioner's arrest. (Giannantonio Decl. ¶¶ 7-8.) In addition, she is now employed in Pretoria, South Africa as the Deputy Immigration and Customs Enforcement Attache, where she is expected to remain through December 2007. (Giannantonio Decl. ¶ 9.) This is sufficient to make a prima facie showing of prejudice.

Once the government makes a prima facie showing, the burden of production shifts to the petitioner to show either that the government actually was not prejudiced or that the petitioner exercised reasonable diligence in filing the claim. *Telink*, 24 F.3d at 47. Petitioner argues Giannantonio's role was limited to transporting Petitioner to Metropolitan Correctional Center ("MCC") because she was not one of the Border Patrol Agents who initially apprehended Petitioner. He argues Giannantonio's testimony would therefore be irrelevant to any retrial. Although the Report of Investigation, signed by Giannantonio, states Petitioner was transported to the MCC, it does not state who transported him. (Reply Ex. B.) Even if Giannantonio transported Petitioner, the documents indicate she had a broader involvement in the case. Giannantonio was the DEA Case Agent and criminal investigator on the case. (Resp. Ex. 1F; Reply Ex. B.) She "responded to the U.S. Border Patrol Imperial Beach Station and arrested" Petitioner. (Reply Ex. B.) Accordingly, the Court rejects Petitioner's argument that Giannantonio's recollection of the events would be irrelevant if Petitioner were retried.

---

[6] The Court acknowledges the Report of Drug Property Collected, Purchased or Seized, which shows the amount seized and laboratory analysis of a sample confirming that the substance seized was marijuana, has been preserved in the United States Attorney's file. (Resp. Ex. 1G.)

Furthermore, Petitioner does not address the government's contention that the lack of transcript of Petitioner's colloquy and sentencing and the inability to identify the defense counsel have prejudiced its ability to respond to the Petition.

Likewise, Petitioner has not shown that he exercised reasonable diligence in filing his Petition, *see Telink*, 24 F.3d at 47, or presented valid or sound reasons for not attacking his conviction earlier, *see Kwan*, 407 F.3d at 1011, 1013. Petitioner explains he "did not seek to invalidate his conviction and the sentence imposed earlier because [he] was not aware that this conviction would render [him] ineligible for legalization of [his] status in the United Sates until Mr. Pineda . . . advised [him] of this fact in January, 1999." (Hernandez-Zarco Decl. ¶ 13.) It is undisputed Petitioner became aware of the effect of his 1990 conviction when he consulted Pineda for purposes of initiating immigration proceedings to legalize his status. The delay in commencing those proceedings ultimately caused a sixteen-year delay in filing the instant Petition. According to Petitioner's declaration, legalization of his status was very important to him in 1990. (*See* Hernandez-Zarco Decl. ¶ 6.) Promptly commencing the immigration proceedings was the means to accomplish Petitioner's goal of legalizing his status, which also was bound to, and did, reveal whether his conviction would interfere with his goal. He offers no explanation why he did not attempt to address his immigration status until 1999 – more than eight years after his conviction.[7] He argues one of the requirements for adjustment of status is to establish a continuous residence in the United States for a period of ten years. (Reply at 7.) However, Petitioner came to the United States in 1985 and continuously resided here since that time. (Hernandez-Zarco Decl. ¶ 2.) He offers no explanation for sleeping on his rights until 1999.

Petitioner requested an evidentiary hearing in case the court determined he was not entitled to relief. An evidentiary hearing is required when (1) a petitioner "allege[s] specific facts which, if true, would entitle him to relief; and (2) the petition, file and record of the case

---

[7] Petitioner consulted Pineda in January 1999, but no immigration proceedings were commenced until July 2001, a year and a half later. (*Cf.* Hernandez-Zarco Decl. ¶ 9 & Resp. Ex. 3.)

cannot conclusively show that he is entitled to no relief." *United States v. Howard*, 381 F.3d 873, 877 (9th Cir. 2004). Petitioner has not alleged any specific facts regarding the delay in seeking to legalize his immigration status, which led to a sixteen-year delay in filing the instant Petition. Furthermore, the Petition, file and record of the case show prejudice to the government due to the delay. Accordingly, an evidentiary hearing is not required.

**CONCLUSION**

For the foregoing reasons, the Petition is **DENIED**.

**IT IS SO ORDERED.**

DATED: November 21, 2006

_____
M. James Lorenz
United States District Court Judge

COPY TO:

HON. LEO S. PAPAS
UNITED STATES MAGISTRATE JUDGE

ALL PARTIES/COUNSEL